12-1581
Mental Disability Law Clinic, Touro Law Center v. Hogan

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of March, two thousand thirteen.

Present:     ROBERT A. KATZMANN,
             BARRINGTON D. PARKER, JR.,
                      *Circuit Judges*,
             WILLIAM F. KUNTZ, II,
                      *District Judge*.[*]

_____

MENTAL DISABILITY LAW CLINIC, TOURO LAW
CENTER,

                 *Plaintiff-Appellant*,

LIMONI BROWN, as administrator of the Estate of
Evelyn Hasson, JED ROTHSTEIN, and BRIAN
DEMARCO,

                 *Plaintiffs*,

EDWARD DAVISON,

                 *Proposed Intervenor,*

          v.                                          12-1581

_____

[*] The Honorable William F. Kuntz, II, of the United States District Court for the Eastern District of New York, sitting by designation.

MICHAEL F. HOGAN, in his official capacity as
Commissioner of the New York State Office of
Mental Health,

*Defendant-Appellee*,

GEORGE PATAKI, in his official capacity as
Governor of New York State, JOHN ROE, in his
personal capacity, JOHN DOE, Warden, in his personal
capacity, REGINALD GLOVER, personally, FRANK
TINKER, personally, STEPHEN HODGES, personally,
JOHN KILLILEA, personally,

*Defendants.*[**]

---

For Plaintiff-Appellant
and Proposed Intervenor:    WILLIAM M. BROOKS, Mental Disability Law Clinic, Jacob D.
                            Fuchsberg Law Center, Touro College, Central Islip, N.Y.

For Defendant-Appellee:     VALERIE FIGUEREDO, Assistant Solicitor General (Barbara D.
                            Underwood, Solicitor General, and Steven C. Wu, Special Counsel
                            to the Solicitor General, *on the brief*), *for* Eric T. Schneiderman,
                            Attorney General of the State of New York, New York, N.Y.


        Appeal from the United States District Court for the Eastern District of New York

(Block, *J.*).

        **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND**

**DECREED** that the judgment of the district court is **AFFIRMED**.

        Plaintiff-Appellant Mental Disability Law Clinic ("the Clinic") and Proposed Intervenor

Edward Davison appeal from a March 30, 2012, Memorandum and Order of the United States

District Court for the Eastern District of New York (Block, *J.*).  That Memorandum and Order

granted summary judgment to Defendant-Appellee Michael F. Hogan in his official capacity as

Commissioner of the New York State Office of Mental Health ("OMH"), denied Davison's

---

[**] The Clerk of Court is instructed to amend the official caption as shown above.

2

motion to intervene, and denied the Clinic's motion for class certification. The Clinic contends that OMH's policy of filing counterclaims for outstanding care and treatment charges against patients who sue OMH violates the First and Fourteenth Amendments even though each counterclaim is limited to the amount of money the patient can recover in his or her lawsuit. OMH contends that summary judgment is appropriate based on the grounds identified by the district court and on the additional ground that the Clinic does not have standing to prosecute this action. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

We begin with OMH's challenge to the Clinic's standing because standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006). The elements of the Article III standing requirement are well-established. "[A] plaintiff must have suffered an injury in fact that is distinct and palpable; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision." *Id.* (internal quotation marks omitted). OMH argues that the Clinic has not suffered an injury in fact because the Clinic "bases its assertion of injury solely on the resources that it has expended to pursue affirmative litigation against OMH's counterclaim practice—with the majority of those resources spent on this very case." Brief for Defendant-Appellee OMH at 20-21 (emphasis omitted). OMH's reasoning disregards established Second Circuit precedent.

This Court has explicitly rejected the argument that litigation expenses are insufficient to demonstrate an injury in fact for the purposes of Article III standing. *See Nnebe v, Daus*, 644 F.3d 147, 157 (2d Cir. 2011) ("We recognize that some circuits have read *Havens Realty* [*Corp. v. Coleman*, 455 U.S. 363 (1982),] differently than we read it in *Ragin* [*v. Harry Macklowe Real*

3

*Estate Co.*, 6 F.3d 898 (2d Cir. 1993),] and have emphasized that litigation expenses alone do not constitute damage sufficient to support standing. Nevertheless, *Ragin* remains good law in this Circuit." (citations and internal quotation marks omitted)). We have also held that an organization is not deprived of standing solely because some of the expenses that provide a basis for standing were dedicated to litigating the very action in which the defendant challenges the organization's standing. *See Ragin*, 6 F.3d at 905. In light of the Clinic director's affidavit stating that the Clinic has diverted resources from education and training in order to contest the OMH practice at issue in this case, we affirm the district court's holding that the Clinic has standing to prosecute this action.

We turn to the Clinic's First Amendment claim. The Clinic contends that the district court erred by framing its claim as one for retaliation. To show retaliation in violation of the First Amendment, a "plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). The Clinic argues that where the contested behavior is a matter of policy instead of an individual instance of retaliation, a plaintiff need not demonstrate retaliatory intent.

We disagree. It is not the scale of a government's responsive action that renders the action unconstitutional, but rather the retaliatory intent with which it was implemented and its chilling effect on the exercise of a First Amendment right. The Clinic points to no case law in which this Court or any other has declined to apply retaliation doctrine to a plaintiff's claim that a government entity responded or will respond in an unconstitutional manner to the exercise of First Amendment rights. Moreover, adopting the exception to retaliation doctrine that the Clinic

4

suggests is unreasonable; pursuant to this rule, if a government formulated a policy under which its attorneys must file a meritorious counterclaim whenever such a potential counterclaim exists, such a policy would be unconstitutional regardless of the government's intent.

Turning to the application of First Amendment retaliation doctrine, the Clinic does not challenge the district court's holding that the Clinic failed to produce any evidence demonstrating that OMH adopted the contested policy with retaliatory intent. We consequently affirm the district court's grant of summary judgment to OMH. *See Greenwich Citizens Comm., Inc. v. Cntys. of Warren & Washington Indus. Dev. Agency*, 77 F.3d 26, 30 (2d Cir. 1996) ("[A]t least for a claim of a First Amendment violation arising in the context of litigation, a governmental entity alleged to have chilled a litigant's freedom of speech by filing counterclaims in response to a complaint must be shown to have acted with retaliatory intent."). Having done so, we do not reach OMH's argument that the Clinic was required to show actual chill (as opposed to an objectively chilling effect) and that the Clinic failed to do so.

Next, the Clinic contends that the district court erred in granting judgment to OMH on the Clinic's equal protection claim. The Clinic contends that OMH violates the Equal Protection Clause of the Fourteenth Amendment because it immediately assesses treatment charges against patients who sue OMH but does not assess treatment charges against patients who sue OMH employees until after damages, if any, are awarded to those patients. The Clinic's claim may be analyzed under the doctrine of either selective prosecution or class-of-one discrimination.

Selective prosecution plaintiffs "have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

5

*Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)).  Here, as noted above, the Clinic has produced no evidence demonstrating that the differential treatment was based on the intent to inhibit or punish the exercise of the constitutional rights of OMH patients.  For the same reason that the Clinic's First Amendment claim fails, its selective prosecution claim fails as well.

Under class-of-one discrimination doctrine, "when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a rational basis for the difference in treatment." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008) (internal quotation marks omitted).  Here, there is a rational basis for the disparate treatment.  When a plaintiff sues OMH in the Court of Claims, OMH can file a counterclaim because it is a defendant.  When a plaintiff sues OMH employees in federal or state court, OMH is not a party and cannot file a counterclaim. This difference in circumstances provides a rational basis for the differential treatment with respect to OMH's assessment practices: only because OMH can file a counterclaim in the former category of cases does it have reason to assess charges while the patient's lawsuit is still pending.

The Clinic contends that OMH could file an independent action against a patient as soon as that patient sues against an OMH employee; OMH would first have to assess charges in order to file such an action.  However, it is rational for OMH to wait and see if a patient is awarded any damages from the OMH employee.  OMH thus avoids spending resources filing a potentially unnecessary action.  Additionally, by waiting, OMH is able to ascertain the amount of damages awarded and to limit the amount of the claim to that which the patient is capable of paying. *See Acevedo v. Surles*, 778 F. Supp. 179, 191 (S.D.N.Y. 1991) (holding that the prior OMH practice of claiming the full amount of care and treatment charges from patients who file lawsuits against

6

OMH regardless of the patients' ability to pay violates the First Amendment and the Equal Protection Clause).  In light of these considerations, we hold that there is a rational basis for the disparate treatment of patients who sue OMH and patients who sue OMH employees, and we affirm the district court's holding with respect to class-of-one discrimination.

Finally, we turn to Davison's motion to intervene and the Clinic's motion to certify a class.  Because we affirm the district court's judgment with respect to the merits of the claims asserted by the Clinic, these motions are moot.  We consequently affirm the district court's denial of both motions.

We have considered the Clinic's remaining arguments on appeal and find them to be without merit.  Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7